UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARA HASSANZADEH,<br><br>Petitioner,<br><br>v.<br><br>WARDEN OF THE CALIFORNIA CITY<br>ICE DETENTION FACILITY, et al.,<br><br>Respondents. | No.  1:26-cv-0056 DC CKD P<br><br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner, detained by the Immigration and Customs Enforcement Agency (ICE), has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  This proceeding was referred to this court by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1).  For reasons which follow, the court recommends the petition for writ of habeas corpus be granted and petitioner be released.

I. Facts

Petitioner is a native of Iran.  ECF No. 10 at 10.  Petitioner left Iran because she was subjected to arrest and violence by members of the government for the peaceful protest of female oppression.  ECF No. 8 at 2.  On or about November 12, 2024, petitioner arrived in the United States near San Ysidro.  ECF No. 10 at 10.  When she encountered border patrol agents she was arrested and transported to the San Diego Area Detention/Transit Staging Area.  Id. at 12.  The

1

next day petitioner was released by "Order of Recognizance" premised upon a finding that petitioner was not a threat to national security or public safety. Id. at 13. She was ordered to appear on September 24, 2025, in San Francisco for removal proceedings. Id. at 6.

Petitioner holds a masters degree in accounting with several years of work experience. While on release, petitioner was learning English to enable her to gain employment, ECF No. 8 at 2, and resided with her fiancé in San Diego. Id. at 36.

On September 7, 2025, petitioner was arrested by La Mesa Police for a "domestic incident." Id. at 36. In a letter dated December 16, 2025, the San Diego County District Attorney's Office indicated that no charges were filed and none were contemplated. Id. at 38. Petitioner has no criminal convictions. Id. at 37.

On September 23, 2025, petitioner was instructed to report to an ICE office in San Diego. After petitioner appeared, she was arrested without being told why and has remained in detention since then. ECF No. 8 at 31, 36; No. 10 at 15-18. She is currently being held at the California City ICE Detention Facility. ECF No. 8 at 31.

Petitioner requested "custody redetermination" which was denied by an immigration judge on February 4, 2026. Id. at 34. The judge found the immigration court did not have statutory jurisdiction to hold such a hearing and, even if it did, petitioner is not entitled to release because her arrest renders her a danger to the public. Id.

Petitioner has a pending petition for asylum, ECF No. 1 at 6, and it has been found that her fear of persecution from Iranian government officials because of her feminist beliefs is credible. ECF No. 8 at 3. Her next hearing concerning her immigration status is April 3, 2026. ECF No. 10 at 27. Petitioner is not subject to a final order of removal. ECF No. 1 at 6.

II. Standard for Habeas Relief.

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a

2

petitioner in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

III. Violation of Fifth Amendment

    A. Liberty Interest

Petitioner contends that her being detained before a determination that she is a flight risk or danger to the community at a hearing violates her Fifth Amendment right to not have her liberty taken away without due process.[1] Generally speaking, the Due Process Clause applies to all persons within the "geographic borders" of the United States. Id. at 693. "Aliens, even aliens whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments." Plyler v. Doe, 457 U.S. 202, 210 (1982). Due process protection applies to aliens who have "passed through our gates." Shaughnessy v. U.S., 345 U.S. 206, 212 (1953). Even in the immigration context, government detention is permissible "only 'in certain special and narrow nonpunitive circumstances, where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint.'" Kong v. United States, 62 F.4th 608, 616 (1st Cir. 2023) (quoting Zadvydas, 533 U.S. at 690).

The Supreme Court has found that a protected liberty interest may arise from a conditional release from physical restraint. Young v. Harper, 520 U.S. 143, 147-49 (1997). To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey[ v. Brewer, 408 U.S. 471 (1972)]." Gonzalez-Fuentes v. Molina, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

---

[1] Because the court finds petitioner is entitled to the relief she seeks for a violation of the Fifth Amendment, the court need not address her other claims.

In Morrissey, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." Morrissey, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring, the parolee's "condition is very different from that of confinement in a prison." Id. "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." Id. The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." Id. (quotations omitted). Therefore, a parolee possesses a protected interest in "continued liberty." Id. at 481-84.

The regulations authorizing ICE to release a noncitizen from custody into the United States require that the noncitizen "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). "Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." Saravia v. Sessions, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017).

In light of all of the foregoing, the court finds that petitioner's initial release created a reasonable expectation that she would be entitled to retain her liberty as long as she was not a flight risk or dangerous. See Perry v. Sindermann, 408 U.S. 593, 601-03 (1972) (finding reliance on governmental representations may establish a legitimate claim of entitlement to a constitutionally-protected interest). "[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody he has a protected liberty interest in remaining out of custody." Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). "[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Respondents argue that petitioner's re-arrest and detention were mandated by statute because although petitioner was physically admitted into the United States, she remains an

4

"applicant for admission" under 8 U.S.C. § 1225(b) not entitled to due process protection.  In DHS v. Thuraissigiam, 591 U.S. 103 (2020) the Supreme Court found that an alien arrested near the border around time of his illegal entry, detained, and ordered removed was not a person present in the country and therefore was not entitled to due process protection.

While petitioner still may be an "applicant for admission" as that term is defined in 8 U.S.C. § 1225(b), she has also "passed through our gates," Shaughnessy, 345 U.S. at 212, is a person within the border of the United States entitled to Due Process under Zadvydas and is not subject to an order of removal.  These facts distinguish her from Supreme Court precedent as to persons detained at or near their time and place of entry and / or ordered removed.  The undersigned rejects the premise that petitioner, who was released into the country, has never been charged with a crime, has not been ordered removed, and has ties to her community after her almost year-and-a-half presence in the United States, does not possess the most fundamental of rights not to be deprived of life, liberty or property by the executive for any reason the executive sees fit.  See Jennings v. Rodriguez, 583 U.S. 281, 332 (2018) (Breyer, J., dissenting) ("Freedom from arbitrary detention is as ancient and important a right as any found within the Constitution's boundaries.").  Denying petitioner due process protection because she is technically an "applicant for admission" as opposed to an "admittee" as those terms are defined in immigration law, "subordinates fact to fiction, [and] disregards the plain meaning of the Due Process Clause, which promises its protection to every person within the United States." Rincon v. Hyde, No. 15-12633 BEM, 2025 WL 3122784, * 2 (Dist. of Mass., November 7, 2025) (internal quotation omitted).  "Indeed, to apply the entry fiction doctrine to a case like Petitioner's is to set aside the plain meaning of the Fifth Amendment altogether." Id. at * 7.

B.  Process Due

Next, the Court turns to what procedures are necessary to ensure that the deprivation of a protected liberty interest meets the demands of the Constitution.  The Ninth Circuit has "regularly applied Mathews [v. Eldridge, 424 U.S. 319 (1976)], to due process challenges to removal proceedings." Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022); see also Hernandez, 872 F.3d at 993 (applying Mathews factors in immigration detention context).

"Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context." Rodriguez Diaz, 53 F. 4th at 1206-07 (citations omitted). Under Mathews, the Court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's interest. Mathews, 424 U.S. at 335.

First, petitioner has a clear interest in remaining free from detention. "Freedom from imprisonment -- from government custody, detention, or other forms of physical restraint -- lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690 (citing Foucha v. Louisiana, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause.); Hernandez, 872 F.3d at 981 ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process.").

"The risk of an erroneous deprivation [of liberty] is high" when "[the petitioner] has not received any bond or custody redetermination hearing." See A.E. v. Andrews, 1:25-cv-0197 KES SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is typically justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690; Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023). While petitioner's arrest and detention by ICE appear premised at least in part upon her arrest for a "domestic incident" by La Mesa Police on September 7, 2025, it does not appear anyone made any serious attempt to determine whether petitioner was in fact dangerous or a flight risk as no charges were ever filed against petitioner.

As to the third Mathews factor, this Court recognizes that the government has an interest in enforcing immigration laws, but respondents' interest in detaining petitioner without a hearing is "low." Ortega v. Bonnar, 415 F. Supp. 3d at 970; Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. March 3, 2025). Detention hearings in immigration courts are routine and impose a "minimal cost." Id.

/////

6

The court finds that the Mathews factors weigh in favor of finding that petitioner is entitled to a bond hearing, and petitioner should have been provided such a hearing before she was detained.  "An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (internal quotation marks and citation omitted) (emphasis added).  In criminal cases, parolees released on parole, which does not provide "absolute liberty," but rather "conditional liberty properly dependent on observance of special parole restrictions," are entitled to due process, including a pre-deprivation hearing before their parole can be revoked.  Morrissey, 408 U.S. at 480-86.  "Numerous district courts have held that these principles extend to the context of immigration detention." F.M.V. v. Wofford, 1:25-cv-2381 KES SAB, 2025 WL 3083934 at *6 (E.D. Cal. Nov. 4, 2025) (collecting cases).  Respondent points to no reasons a pre-deprivation hearing could not be held, and provided no evidence of "urgent concerns," thus, "a pre-deprivation hearing is required to satisfy due process."  Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025).

C.  February 4, 2026, Hearing

Respondents do not assert that petitioner's February 4, 2026, hearing provided the process due with respect to petitioner's liberty interest identified above.  Nevertheless, the court addresses the issue to clarify why it did not.

First, petitioner is entitled to a pre-deprivation hearing, and a hearing more than four months into her detention does not satisfy this requirement.

Second, at a bond hearing required under the Due Process Clause, release shall be ordered unless it is shown by clear and convincing evidence the detainee is a danger to the community or a flight risk.  Martinez v. Clark, 124 F.4th 775, 785-86 (9th Cir. 2924).  The clear and convincing standard requires that the evidence establish "an abiding conviction that the truth of [the] factual contentions at issue is highly probable."  Mondaca-Vega v. Lynch, 808 F.3d 413, 422 (9th Cir. 2015) (en banc).  In the immigration judge's decision denying petitioner release, the judge indicates she put the burden on petitioner to establish she is not dangerous, ECF No. 8 at 34,

/////

7

which is enough upon which to base a finding that the hearing provided did not amount to the process to which petitioner was entitled.[2]

As to whether clear and convincing evidence of dangerousness actually was presented, the immigration judge was made aware charges were not filed for matters leading to petitioner's arrest, nor would they be. ECF No. 8 at 32-33. The only evidence presented even suggesting petitioner is dangerous was the fact of her arrest which is minimal and well short of clear and convincing. See Ortega-Rangel v. Sessions, 313 F.3d 993, 1004 (N.D. Cal. 2018) (petitioner's mere arrest for drug offense not clear and convincing evidence of dangerousness supporting denial of release).

Accordingly, IT IS HEREBY RECOMMENDED that:

1. The amended petition for writ of habeas corpus (ECF No. 8) be GRANTED.

2. Petitioner be released from custody.

3. That the terms of release be as follows:

A. Any additional restrictions on petitioner's release from custody cannot be imposed unless determined necessary at a pre-deprivation / custody hearing.

B. Petitioner cannot be re-arrested or re-detained by respondents absent compliance with constitutional protections, including a minimum of seven-days' notice and a hearing before a neutral fact-finder where respondents show: (a) there are material changed circumstances which demonstrate that there is a significant likelihood of petitioner's removal in the reasonably foreseeable future; or (b) respondents demonstrate by clear and convincing evidence that petitioner poses a danger to the community or a flight risk. At any such hearing, Petitioner shall be allowed to have counsel present.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven (7)** days after being served with these findings and recommendations, any party may file written

---

[2] While putting the burden of proof on petitioner, the judge refused to allow her to present the testimony of petitioner's fiancé, the only witness as to the circumstances surrounding petitioner's arrest for a "domestic incident." Petitioner asserts the witness would have testified that no one was hurt in the incident leading to petitioner's arrest. ECF No. 8 at 33.

8

objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within **seven (7)** days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated:  February 27, 2026

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

1
hass0056.mer

9